IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| TMOTHY HUNTER, | Case No. 1:11-cv-01450-CL |
| Plaintiff, | |
| | ORDER |
| v. | |
| DUTCH GOLD RESOURCES, INC., a Nevada Corporation, | |
| Defendant. | |

CLARKE, Magistrate Judge.

This matter comes before the court on plaintiff's motions for amended motion for default judgment (#45) and amended motion for attorney fees (#46). For the reasons stated below, plaintiff's motions are granted.[1]

## PROCEDURAL BACKGROUND

Plaintiff, Timothy Hunter ("Hunter"), initiated this action on December 2, 2011, by filing a Complaint (#1) alleging claims for unpaid wages, breach of contract, quantum meruit and unjust enrichment. Defendant Dutch Gold Resources, Inc., ("Dutch Gold") filed its Answer (#8) on January 17, 2012. On February 21, 2012, the court held a telephonic conference (#13) to set case management deadlines pursuant to Federal Rule of Civil Procedure ("Rule") 16. The

---

[1] The parties have consented (#17) to jurisdiction by a United States Magistrate Judge.

Page 1 – ORDER

parties, appearing through their respective counsel, agreed to case management deadlines and stipulated that plaintiff would file an Amended Complaint. Hunter filed his First Amended Complaint ("FAC") (#16) on February 28, 2012. Dutch Gold's Answer in response was due March 13, 2012. On March 6, 2012, counsel for Dutch Gold filed a motion (#18) to withdraw and to extend the deadline for defendant's Answer. On March 8, 2012, the court granted (#19) the motion to withdraw and extended (#20) the deadline for Dutch Gold's Answer in response to Hunter's FAC to April 10, 2012.

Dutch Gold failed to file an Answer to Hunter's FAC. Hunter subsequently filed motions for entry of default judgment pursuant to Rule 55 (#25)[2] and for attorney fees pursuant to ORS § 652.200 (#23). On April 13, 2012, this court denied (#29) Hunter's motions as procedurally improper because he had not first obtained entry of default, and set a telephonic status conference (#30) to determine the status of Dutch Gold's efforts to secure new counsel. On April 16, 2012, Hunter filed a motion for entry of default (#32).

At the May 3, 2012, status conference (#34), Dan Hollis, CEO of Dutch Gold, advised the court that Dutch Gold intended to defend this action and was actively seeking counsel to represent it in this matter. The court granted Dutch Gold until June 1, 2012, to obtain counsel and file a notice of appearance, and cautioned that Hunter's motion for entry of default would be granted if Dutch Gold failed to meet this deadline. Dutch Gold failed to file or request an extension for filing a notice of appearance of counsel, Answer to plaintiff's FAC, or response to

---

[2] On April 11, 2012, plaintiff electronically filed a document titled "Plaintiff's Motion for Judgment of Default" (#21), using the Electronic Case File ("ECF") events Motion for Entry of Default, Motion for Default Judgment, Motion for Judgment, and Motion to Intervene. On April 12, 2012, plaintiff filed the identical document (#24) using ECF event Motion for Entry of Default, then filed the same document, this time titled as "Plaintiff's Motion for Entry of Default" (#26). The Clerk of the Court subsequently administratively corrected the record (#26) to reflect that plaintiff's motions (#21, 24) were corrected and replaced by (#25).

Hunter's motion for entry of default judgment. Accordingly, on June 14, 2012, the court granted (#37) Hunter's motion and entered default against Dutch Gold.

On June 21, 2012, Hunter filed motions for default judgment (#38) and attorney fees (#40). Dutch Gold failed to either file or request an extension for filing either a notice of appearance of counsel or a response in opposition to Hunter's motions by the July 9, 2012, response deadline. However, at a July 19, 2012, telephonic status conference (#43), Hunter conceded he had not properly served these motions on Dutch Gold. He therefore withdrew the original motions (#38, 40) and filed the amended motions for default judgment (#45) and attorney fees (#46) presently before the court, and served a copy of the motions on Dutch Gold by first class and certified mail (#47). Dutch Gold's response in opposition was due on August 6, 2012. Yet again, Dutch Gold has failed to either file or request an extension for filing a notice of appearance of counsel or a response in opposition to Hunter's motions.

## DISCUSSION

Hunter's First Amended Complaint ("FAC") (#16) alleges claims for unpaid wages, breach of contract, and quantum meruit and unjust enrichment. He alleges he was employed in the position of Mine Manager by Dutch Gold from February 2008 through September 20, 2008. (FAC, ¶ 6). He alleges the terms of his employment and compensation are set out in a two page employment agreement attached as Exhibit A to his FAC. (Id., ¶ 6 & Ex. A). Pursuant to this employment agreement, dated February 21, 1008, and signed by Hunter on that date, Hunter was hired at a monthly salary of $10,000, to be paid weekly, with additional compensation of a $250 weekly safety bonus, a $200 weekly "living/car/travel allowance," health insurance at no cost for himself, his spouse and children, 20 days annual non-accrued paid time off, and stock options. (Id., Ex. A, Dckt. # 16-1, pp. 1). In the event of termination without cause or layoff, the

employment agreement provides that Hunter will receive a six month severance package including his salary, safety bonus, and health insurance coverage. (Id., pp. 2). Hunter alleges he was terminated from his employment via layoff on September 20, 2008. (FAC, ¶ 9). He alleges that at the time of his termination he had not been paid for work between August 10 and September 20, 2008. (Id., ¶ 10). Hunter alleges he fully performed all obligations owed under the employment agreement and that despite demand, Dutch Gold willfully failed to pay the wages owed at the time of his termination. (Id., ¶¶ 15, 20).

I.  **Merits of Plaintiff's Motion for Default Judgment**

Entry of default effects an admission of all well-pleaded allegations of the complaint by the defaulted party. Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977). The court finds the well pleaded allegations of the complaint state a claim for which relief can be granted. Anderson v. Air West, 542 F.2d 1090, 1093 (9th Cir. 1976). There are no policy considerations which preclude the entry of default judgment of the type requested. See Eitel v. McCool, 782 F.2d 1470, 1471–1472 (9th Cir. 1986). Entry of default judgment is therefore warranted.

II. **Relief**

The court must next determine the terms of the judgment. Hunter seeks an entry of default judgment against Dutch Gold in the amount of $114,433.60 together with prejudgment interest, and attorney's fees and costs. He has not filed a memorandum of points and authorities in support of his motion that provides a calculation of damages. The court therefore looks to Hunter's Complaint.

   1. **Wages Owed**

Oregon law requires an employer to pay "all wages earned and unpaid" to a discharged employee within one business day after the employee's last day of work. OR. REV. STAT. §

652.140(1). The Oregon Supreme Court has defined wages as "[a]ll earned compensation contracted to be paid by the employer for the employe's [sic] personal service regardless of the nature of such compensation." State ex rel. Nilsen v. Or. State Motor Ass'n, 248 Or. 133, 136, 432 P.2d 512 (1967). "Severance pay is 'wages' for purposes of ORS Chapter 652." Wilson v. Smurfit Newsprint Corp., 197 Or. App. 648, 659, 107 P.3d 61, *rev. dismissed*, 339 Or. 407, 122 P.3d 65 (2005). The term "wages" has also been held to include fixed monthly payments that reimburse an employee for expenses. *See* Olson v. Eclectic Institute, Inc., 201 Or.App. 155, 119 P.3d 791, 793 (2005) (trial court did not err by concluding that fixed automobile allowance payments were wages within the meaning of ORS § 652.150).

Hunter's FAC alleges that for the period between August 10 and September 20, 2008, he is owed $14,846.14 in unpaid salary, $2,131.32 in health insurance benefits, $1,500.00 in earned safety bonuses, $1,200.00 in expense allowances, and $9,230.80 in unpaid paid time off, for a total of $28,908.26. (Id., ¶ 12). Hunter further alleges he is owed the following severance benefits: $60,000.00 in salary wages, $8,525.34 in health insurance benefits, and $6,000.00 in safety bonuses, for a total of $74,525.34. (Id.). Added together, Hunter's unpaid wages and severance benefits total $103,433.60. The FAC states a demand for unpaid wage damages in the amount of $103,433.60 in the prayer.

### 2. Statutory penalty wages

Hunter's FAC alleges he is entitled to $15,000.00 in penalty wages. (FAC, ¶¶ 15). If an employer willfully fails to pay wages due upon termination under ORS § 652.140, ORS § 652.150(1) provides that "as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced." OR. REV. STAT. § 652.150(1). The penalty for

late payment accrues for a maximum of "30 days from the due date." OR. REV. STAT. § 652.150(1)(a). "If the employer fails to pay the final earned wages or any penalty wages that accrued for their late payment, the employee has a statutory 'wage claim' against the employer for those amounts." N. Marion Sch. Dist. No. 15 v. Acstar Ins. Co., 43 Or. 305, 313, 169 P.3d 1224 (2007) (*citing* OR. REV. STAT. § 652.320(7) ("wage claim" is a claim against the employer for "any wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages")).

Hunter was paid a monthly salary of $10,000, not an hourly wage. The court calculates his hourly wage at $57.69.[3] At 8 hours per day, Hunter is entitled to daily penalty wages in the amount of $461.52. Multiplied by 30 days, Hunter is entitled to a maximum penalty wage amount of $13,845.60.

### 3. Damages

Hunter alleges he has incurred $5,000.00 in uninsured medical expenses as the result of Dutch Gold's failure to provide him with information regarding COBRA benefits, causing him to lose his medical insurance benefits. Although entry of default effects an admission of all well-pleaded allegations regarding liability, allegations regarding the amount of damages must be proven. *See* Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Hunter has failed to provide any evidence proving the amount of medical expenses he alleges he incurred as the result of Dutch Gold's breach of contract. Accordingly, Hunter has failed to prove that he is entitled to damages on his breach of contract claim.

//

---

[3] Hunter does not provide any information on the number of hours he was required to work weekly. The court therefore must assume that Hunter worked the standard 40 hours per week, for a total of 2,080 hours per year. The court calculated the $57.69 hourly wage by dividing Hunter's annual salary of $120,000 ($10,000 monthly salary x 12 months) by 2,080 hours (40 hours/week x 52 weeks).

### 4. Attorneys' Fees and Costs

By prevailing on his Oregon wage statue claims, Hunter is entitled to an award of attorney's fees and costs. ORS § 652.200(2) provides that an employee who obtains a favorable judgment on a claim for late payment of wages shall be awarded attorney's fees and costs. OR. REV. STAT. § 652.200(2). A party seeking attorney fees pursuant to ORS § 652.200(2) must file with the court "a signed and detailed statement of the amount of attorney fees or costs and disbursements, together with proof of service" on the adverse party. Rogers v. RGIS, LLP, 229 Or. App. 580, 213 P.3d 583, 586-87 (2009) (*citing*, ORCP 68 C(1), C(4)(a)(1)). Hunter has filed the required statement, showing the hours expended and hourly rates charged by each of his two co-counsel and their legal assistants, totaling $12,790.00. The court finds the hours expended and hourly rates to be reasonable. Hunter also seeks to recover $395 in costs, consisting of the $350 Complaint filing fee and $45 service fee.

### 5. Interest

Hunter asserts he is entitled to both pre- and post-judgment interest. In this diversity case, "state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." Citicorp Real Estate, Inc. v. Smith, 155 F.3d 1097, 1107 (9th Cir. 1998) (internal quotation omitted).

Pre-judgment interest in this case is governed by ORS § 82.010, which provides for simple interest at the rate of nine percent per annum on "[a]ll moneys after they become due." OR. REV. STAT. § 82.010(1)(a). Hunter's wages became due at the times described in ORS § 652.120 and ORS § 652.140. The amounts owed were ascertained or readily ascertainable as of those times by simple calculation according to the terms of the employment agreement. The interest on Hunter's penalty wages began to run at the point when the penalty had "fully

accrued," that is, 30 days following Dutch Gold's initial non-payment. Russell v. U.S. Bank Nat. Ass'n, 246 Or. App. 74, 80-81. 265 P.3d 1 (2011) (*citing* Smurfit Newsprint Corp., 197 Or. App. at 674).

Post-judgment interest is governed by 28 U.S.C. § 1961. *E.g.*, In re Cardelucci, 285 F.3d 1231, 1235 (9th Cir. 2002) ("award of post judgment interest is procedural in nature and thereby dictated by federal law"); Citicorp Real Estate, Inc., 155 F.3d at 1107. Post-judgment interest is calculated from the date of judgment, at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. 28 U.S.C. § 1961(a). Interest on any money judgment is "computed daily to the date of payment ... and shall be compounded annually." 28 U.S.C. § 1961. Although § 1961 appears to set the post-judgment interest rate for all federal judgments, parties may agree to waive its application. *See* Fidelity Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1023 (9th Cir. 2004). Here, there is no evidence the parties agreed to waive the application of Section 1961. The last auction price of 52-week treasury bills, as posted by the Federal Reserve, is 0.18 percent.[4] Therefore, Hunter is entitled to post-judgment interest of 0.18 percent.

## CONCLUSION

For the reasons stated above, the court hereby orders as follows:

1. Plaintiff's motion for default judgment (#38) is GRANTED.
2. Default judgment is entered against defendant in the amount of $103,433.60 on plaintiff's unpaid wages claim under ORS §§ 652.140, 652.150.
3. Default judgment is entered against defendant in the amount of $13,845.60 on plaintiff's statutory penalty wage claim under ORS § 652.150.

---

[4] http://www.federalreserve.gov/releases/h15/current/ (last visited August 8, 2012)

4. Plaintiff is entitled to pre-judgment interest at a rate of nine percent per annum and post-judgment interest at a rate of 0.18 percent.

5. Plaintiff's motion for attorney fees (#40) is GRANTED.

6. Plaintiff is awarded attorney's fees in the amount of $12,790.00 and costs in the amount of $395.00.

7. The Clerk is directed to enter judgment and close the file.

IT IS SO ORDERED.

DATED this 20 day of August, 2012.

MARK D. CLARKE
United States Magistrate Judge

4. Plaintiff is entitled to pre-judgment interest at a rate of nine percent per annum and post-judgment interest at a rate of 0.18 percent.

5. Plaintiff's motion for attorney fees (#40) is GRANTED.

6. Plaintiff is awarded attorney's fees in the amount of $12,790.00 and costs in the amount of $395.00.

7. The Clerk is directed to enter judgment and close the file.

IT IS SO ORDERED.

DATED this \_\_\_20\_\_\_ day of August, 2012.

MARK D. CLARKE
United States Magistrate Judge